## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In re M.H., a child under the age of 18 years**

**No. 15-0804 (Wayne County 14-JA-12)**

**FILED**

**June 16, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner F.H.[1] by counsel, Sherrone Hornbuckle and Ira Clinton Adams III, Legal Aid of West Virginia, Inc., appeals the Circuit Court of Wayne County's July 15, 2015, order denying her motion to intervene in the abuse and neglect proceeding involving her granddaughter, M.H. The West Virginia Department of Health and Human Resources ("Department"), by counsel, Patrick Morrisey, Attorney General, and Michael L. Jackson, Assistant Attorney General, and Alison R. Gerlach, guardian ad litem, filed responses on behalf of the Department and the minor child. Also filing a response were intervenors B.H. and C.H., by their counsel, Elizabeth Gardner Estep.

This Court has considered the parties' briefs, the oral presentations of the parties, and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, the arguments of the parties and the record presented, the Court finds no substantial question of law and no prejudicial error. For those reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This appeal arises from abuse and neglect proceedings involving the minor child M.H., her mother R.H., and her father.[2] The Department received a report that M.H.'s parents were habitual abusers of heroin and prescription drugs. The reporter also stated that M.H.'s parents, who were staying at F.H.'s home, allowed a known sexual abuser to frequent the home. The reporter stated that M.H. had complained about pain in her vagina. The reporter also alleged that while drinking and perhaps in the presence of M.H., the paternal grandfather placed a gun in his mouth that had to be forcibly removed.

---

[1] Because this case involves a child and sensitive matters, we follow our practice of using initials to refer to the child, her parent, and other relatives. *See* W. Va. R. App. P. 40; *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] The father and minor child share identical initials; to ease the potential for confusion, M.H. the father will be referred to simply as "the father."

1

The Department launched an investigation and attempted to make contact with M.H. and her parents for several days. On February 21, 2014, a caseworker went to M.H.'s school, but the child was not in class that day. The caseworker went to F.H.'s home, where F.H. told him that M.H. sometimes got off the school bus and came to her home but that the child was not there and had not been there for several days. M.H.'s school reported M.H.'s absence from school on February 24 and 25, 2014, at which time the caseworker returned to F.H.'s home. F.H. stated that child was not at her house and suggested that he go to the parents' last known address.

On February 26, 2014, the caseworker again returned to F.H.'s home after receiving information that M.H. was there. F.H. stated that the child was indeed present and had been dropped off at her home the previous evening. The caseworker had an opportunity to speak with M.H. and obtained disclosures from the child that she may have been sexually abused by a person previously reported to the Department to be a registered sex offender. The individual, who was same individual referenced above, was a friend of M.H.'s parents and also F.H.

The Department eventually made contact with the parents, who agreed with the Department's suggestion that M.H. be placed in a protective custody environment. M.H. was placed in the home of B.H., her paternal uncle. While being driven to her uncle's house, M.H. disclosed that she had seen her paternal grandfather place a gun in his mouth and threaten to shoot himself.

On February 27, 2014, the Department filed a petition alleging that M.H. was an abused or neglected child. The petition named M.H.'s parents as respondents, but did not name F.H. as a custodian. The child remained in the custody of B.H. and his wife.

An adjudicatory hearing was held on April 11, 2014. M.H.'s parents stipulated to substance abuse and a failure to maintain safe and suitable housing, leading to M.H. being found by the Court to be a neglected child. The parents were granted a post-adjudicatory improvement period.

On July 17, 2014, F.H., who was not represented by counsel, filed a Petition for Appointment of Guardian pursuant to W. Va. Code § 44-10-3 (2013) in the Circuit Court of Wayne County. While F.H. sought to be appointed M.H.'s guardian, she did not allege in her pleadings that she had ever been the child's custodian. On August 6, 2014, the circuit court held a hearing on this request and ordered that the petition be held in abeyance as there was a pending abuse and neglect proceeding. The circuit court suggested that F.H. attempt to intervene in the abuse and neglect proceeding.

On March 27, 2015, the court reviewed the parents' improvement periods and found that the parents had failed to resolve their substance abuse issues. The court found

that it was not in M.H.'s best interests to be returned to her parents. B.H. and his wife filed a motion to intervene in the abuse and neglect proceeding. While this motion to intervene was denied, the Department was ordered to consider B.H. and his wife, as well as another relative L.J., as concurrent placement alternatives.[3]

On May 8, 2015, the circuit court held a dispositional hearing. At this time, M.H.'s parents relinquished their parental rights. The circuit court accepted this voluntary relinquishment and terminated their parental rights. The court granted B.H. and his wife's motions to intervene. M.H. was left in the Department's custody and placed with B.H. and his wife.

On May 11, 2015, F.H. filed a motion to intervene in the abuse and neglect case. She was not represented by an attorney. In this motion, F.H. alleged that M.H. had lived with her for five years and that she had brought the child home as a newborn. She also stated that M.H. was removed from her custody by the Department without a reason.

A hearing was held on June 23, 2015. By this time, F.H. had obtained counsel from Legal Aid to represent her at the hearing. F.H. testified at the hearing that the child had lived with her for almost five years. F.H. argued that as custodian of the child, and as a person standing in loco parentis to the child, she should have been a party to these abuse and neglect proceedings and should have had counsel appointed.

The court questioned F.H. about the timing of the filing of her motion to intervene. In response, F.H. stated that she had paid a retainer and hired an attorney, D.J., who is the husband of L.J.[4] F.H. testified that D.J. agreed to represent her in trying to get M.H. back into her custody. F.H. presented no other evidence indicative of an attorney-client relationship at the hearing.

The Court stated at the hearing that there was no official indication in the record of the case that F.H. had ever been the child's custodian. The Court further noted that there were allegations of safety issues in F.H.'s home in February of 2014, but because F.H. did not attempt to intervene in a timely matter, it was too late to add F.H. as a party to this case.

By order entered July 14, 2015, the circuit court denied F.H.'s motion to intervene in these proceedings. The court found that M.H. had stayed with F.H. on an intermittent basis from the time she was born until M.H. was removed from F.H.'s home in February

---

[3] L.J. is an employee of the Department and is the sister of F.H.'s husband. She is also the spouse of D.J., the lawyer F.H. purportedly hired to represent her interests in custody proceedings. The guardian ad litem and Department report that M.H. is now placed in the home of L.J. and D.J., and that L.J. and D.J. wish to adopt the child.

[4] See supra n.3

of 2014. The court further found that F.H.'s motion to intervene was not timely, and that the Department had instituted actions against F.H. due to allegations of child sexual abuse, drug abuse, and failure to protect the child. From this order, F.H. pursues this appeal.

The Court has previously established the following standard of review:

> Although conclusions of law reached by a circuit court are subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."

Syl. pt. 1, *In Re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

F.H. argues that the circuit court erred in denying her motion to intervene because the court failed to recognize F.H. as a person standing in loco parentis to M.H. She also argues that she tried to intervene in the abuse and neglect case much earlier than the circuit court stated, but because of her attorney D.J.'s unethical behavior it appeared to the court that she filed too late.[5]

The Department argues that there was no evidence when the abuse and neglect petition was filed indicating that F.H. had ever been more than an occasional caregiver for the child. At no time during the investigation did F.H. assert that the child was in her custody. When the Department was able to meet with M.H.'s parents, they too did not assert that the child was in F.H.'s custody. Before this petition was filed, the parents

---

[5] This Court is not finding or concluding on the record of this appeal that there was an attorney-client relationship between F.H. and D.J. We believe that any allegations by F.H. that D.J. engaged in unethical conduct are best developed through a lawyer disciplinary proceeding.

4

agreed to place the child in a relative's custody. That relative was not F.H., but instead, the child was placed by agreement with B.H.

In defense to questions about her delay in seeking intervenor status, F.H. asserted that D.J. represented her while being married to L.J., in whose home the child was residing, and that any delay was due to his purported unethical conduct. She offered no evidence at the hearing other than her testimony that D.J. had agreed to represent her in August of 2014. While these allegations are troubling, the record before us contains no evidence supporting these allegations.

The circuit court's finding that F.H. waited too long to file a motion to intervene is supported by the record and we find no error in the court's denial of the motion. For the foregoing reasons, we find no error in the circuit court's denial of intervenor status for F.H. in the abuse and neglect proceeding involving M.H. and affirm the court's order entered on July 15, 2015.

Affirmed.

**ISSUED: June 16, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II